**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| YEFERSON SUESCUM OCHOA, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 3:26-cv-00698 |
| | ) | Judge Stephanie L. Haines |
| KURT WOLFORD, *et al.*, | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Yeferson Suescum Ochoa ("Petitioner") is an immigration detainee currently held at the Moshannon Valley Processing Center in Phillipsburg, Pennsylvania. Petitioner filed a Petition for Writ of Habeas Corpus, challenging the alleged failure to provide him with a meaningful bond hearing, his alleged arrest without a warrant, and that his detention has become unreasonably prolonged because his removal is not significantly likely in the foreseeable future. ECF No. 1. For the reasons that follow, the Petition will be **GRANTED**.

**I.    BACKGROUND**

Petitioner is a native and citizen of Venezuela. ECF No. 9-4, p. 2. He entered the United States at Eagle Pass, Texas on July 20, 2022. *Id.* On the same day, he was paroled into the United States and released on his own recognizance, with the condition that he attend immigration court hearings and report to Immigration and Customs Enforcement ("ICE") appointments as required. ECF Nos. 1-1, p. 4; 9-1, p. 3. Petitioner complied with these conditions and his release on parole was extended in 2022, 2023, and 2024. ECF No. 1, ¶ 25. On February 1, 2023, he applied for asylum and withholding of removal. ECF No. 1-2, p. 3. On October 4, 2023, he applied for

1

Temporary Protected Status. *Id.* at p. 3. On April 16, 2025, the Government granted Petitioner's application for employment authorization. *Id.* at p. 4. On August 26, 2025, Petitioner reported to ICE's Philadelphia field office for a scheduled check-in appointment and was detained. ECF Nos. 1, ¶ 28; 9-3, pp. 3-4.

On October 31, 2025, an immigration judge ("IJ") denied Petitioner's asylum application and ordered him removed from the United States but deferred removal to Venezuela under the Convention Against Torture. ECF No. 9-6. Petitioner appealed this decision but on January 5, 2026, he withdrew his appeal and the IJ's order became administratively final.[1] ECF Nos. 9-7; 9-9. On February 12, 2026, ICE served Petitioner a notice that it intended to remove him to Mexico. ECF No. 9-12, p. 2. Petitioner expressed a fear of removal to Mexico and was given a Third Country screening, but he failed to establish that it was more likely than not that he would be persecuted or tortured in Mexico. ECF No. 9-13, p. 2.

On April 15, 2026, Petitioner filed a Petition for Writ of Habeas Corpus and Respondents opposed the petition, which has been fully briefed and is ready for disposition. ECF Nos. 1, 9.

## II.   DISCUSSION

Petitioner principally argues that his removal is not significantly likely to occur in the reasonably foreseeable future and that his continued detention therefore exceeds the period reasonably necessary to effectuate his removal under *Zadvydas v. Davis*, 533 U.S. 678 (2001). ECF No. 1, ¶¶ 40-44. He further argues that Respondents' identification of Mexico as the intended country of removal, without evidence that ICE has obtained travel documents or that removal can

---

[1] Petitioner identifies January 30, 2026, the date the Board of Immigration Appeals granted his appeal withdrawal motion, and not January 5, 2026, the date he filed it, as the date his removal order became administratively final. ECF No. 1, ¶ 35. The Executive Office for Immigration Review ("EOIR") guidance, however, provides that "when a motion to withdraw an appeal is filed, the decision of the [IJ] immediately becomes final as if no appeal had ever been filed." EOIR Policy Manual, pt. III, ch. 4.9(b). Respondents likewise treat January 5, 2026, as the operative date. ECF No. 9, p. 5. Accordingly, the Court will use January 5, 2026, as the date Petitioner's removal order became administratively final.

otherwise be effectuated, does not establish that removal is significantly likely to occur in the reasonably foreseeable future. *Id.* at ¶¶ 46, 49. Petitioner separately challenges the circumstances of his arrest and that he was denied constitutionally adequate process, including a bond hearing, during his pre-final-order detention under 8 U.S.C. § 1225(b). *Id.* at ¶¶ 54-80. Lastly, Petitioner challenges the Government's third-country removal policy and relies on *D.V.D. v. U.S. Dep't of Homeland Sec.*, 821 F. Supp. 3d 102 (D. Mass. 2025), to argue that the policy is unlawful and should be set aside.

Respondents counter that Petitioner's prolonged detention challenge was premature because he had not yet been detained for six months when Respondents filed their opposition. ECF No. 9, p. 6. Respondents further argue that Petitioner has failed to meet his burden under *Zadvydas* to show good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future. *Id.* at p. 7. Respondents do not, however, identify any concrete steps taken to effectuate Petitioner's removal, provide evidence that Mexico has agreed to accept him, identify an anticipated removal date, or otherwise address the present likelihood of removal. Respondents also argue that Petitioner's challenges to actions that occurred prior to his shift to detention under Section 1231 are moot. Lastly, Respondents do not address Petitioner's challenge to the Government's third-country removal policy. The Court addresses each claim in turn.

## A. Petitioner's arrest and pre-final-order detention.

Petitioner contends that due process required Respondents to provide notice and an opportunity to be heard before depriving him of his liberty. ECF No. 1, ¶¶ 69-80. According to Petitioner, at the time of his arrest, Respondents "provided [him] with cryptic notice of the reason he was being detained (legal statutory citations regarding entry without inspection) [at the moment of detention] . . . [and] he had no opportunity to respond or speak to an attorney [and] . . . he was

3

without access to any of his papers or property." *Id.* at ¶ 79. Respondents do not rebut this claim specifically but instead aver that everything that occurred prior to Petitioner's post-final-order detention is moot. ECF No. 9, pp. 7-8.

Whatever the merits of those allegations, Petitioner is no longer detained under Section 1225(b). The IJ entered a removal order on October 31, 2025, Petitioner withdrew his administrative appeal on January 5, 2026, and the order became administratively final. His present detention therefore arises under Section 1231. A habeas petition becomes moot when the Court can no longer grant effective relief from the custody being challenged. An order concerning the process Petitioner received before his removal order became final would not alter the independent statutory authority governing his present post-final-order detention. Petitioner does not identify any continuing consequence of the alleged pre-final-order procedural defect that this Court could remedy through habeas relief.

Accordingly, Petitioner's challenges to his arrest and pre-final-order detention will be dismissed as moot. The Court therefore does not decide whether the notice provided at the time of his arrest satisfied *Mathews v. Eldridge*, 424 U.S. 319 (1976).

**B. The Government's third-country removal policy.**

Petitioner also challenges the Government's policy governing removal to third countries. He argues that ICE cannot lawfully remove him to Mexico and relies on the District of Massachusetts's decision in *D.V.D. v. U.S. Dep't of Homeland Sec.*, 821 F. Supp. 3d 102 (D. Mass. 2026). The Court addressed a similar claim in *Odiase v. Oddo*, No. 3:25-206, 2025 WL 2673938 (W.D. Pa. Sept. 18, 2025). In *Odiase*, the petitioner had a final order of removal and withholding of removal to her country of citizenship, but ICE sought removal to a third country. *Id.* at *2. The Court held that a challenge to removal to the third country was "closely bound up with" the final

order of removal and the execution of that order, and therefore jurisdiction was barred by 8 U.S.C. §§ 1252(a)(5), (b)(9), and (g). *Id.* at *6. Petitioner's reliance on *D.V.D.* does not alter that conclusion. That decision is not binding on this Court, and this Court has already concluded that third-country removal challenges of this kind are barred by § 1252(a)(5), § 1252(b)(9), and § 1252(g). Third-country removal challenges are encompassed within a petitioner's final order of removal and must be pursued, if at all, through the review process prescribed by 8 U.S.C. § 1252, not through this Court's habeas jurisdiction. *See Odiase*, 2025 WL 2673938; *see also* 8 C.F.R. §§ 1208.17(b)(2); 1208.16(f).

Accordingly, the Court lacks jurisdiction over Petitioner's challenge to the Government's third-country removal policy and that claim will be dismissed.

**C. Petitioner's continued detention under Section 1231.**

Under federal law, when a removal order becomes final, ICE has 90 days in which to remove a noncitizen from the United States and must detain the noncitizen during this period. *See* 8 U.S.C. §§ 1231(a)(1), (a)(2)(A). After this period expires, however, continued detention is authorized only for so long as "removal is . . . reasonably foreseeable." *Zadvydas*, 533 U.S. at 699. Because "[i]ndefinite, [or] permanent, detention" would raise serious constitutional concerns, *Zadvydas* construed detention beyond the 90-day period as authorized only for so long as reasonably necessary to accomplish removal, and recognized six months as a presumptively reasonable period. *Id.* at 700-701. "This 6-month presumption, of course, does not mean that every [noncitizen] not removed must be released after six months." *Id.* at 701. To obtain release, the noncitizen bears the initial burden to provide good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future. *Id.* If they make that showing, "the Government must respond with evidence sufficient to rebut" it. *Id.* And as the period of post-

removal detention grows, what counts as the "'reasonably foreseeable future' conversely . . . shrink[s]." *Id.*

At the time he filed his Petition in this case, Petitioner had been detained for almost three months following his removal order becoming administratively final. In their habeas response, Respondents argued that Petitioner's claim was premature under *Zadvydas* as his detention was within the presumptively reasonable six-month period. At the time of this writing, however, Petitioner has now been detained for over six months—outside the "presumptively" reasonable period. Under *Zadvydas*, once a petitioner has provided "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the burden shifts to the Government to "respond with evidence sufficient to rebut that showing." 533 U.S. at 701.

Here, Petitioner represents, and Respondents do not dispute, that he has no Mexican travel documents. ICE has identified Mexico as its intended country of removal, but the record contains no evidence that Mexico has agreed to accept Petitioner or that the arrangements necessary to effectuate his removal have been made. Given the passage of more than six months, the absence of any documented acceptance by Mexico, and the lack of any concrete removal arrangements, the Court finds that Petitioner has provided good reason to believe that his removal is not significantly likely in the reasonably foreseeable future. The question then becomes whether Respondents have come forward with sufficient evidence to "rebut that showing." *Id.* The only evidence Respondents produced, however, is ICE's notice stating it intends to remove Petitioner to Mexico. In the period since Respondents filed their response, Respondents have not supplemented the record or otherwise advised the Court of any material progress toward effectuating Petitioner's removal. They have not shown that Mexico has agreed to accept him, that ICE has obtained necessary travel authorization or documents, that Petitioner has undergone a consular interview, or that a removal

flight has been scheduled. Nor have Respondents identified an anticipated removal date or asserted that Petitioner has failed to cooperate with removal efforts. Thus, although Respondents' prematurity argument addressed the status of Petitioner's detention when their response was filed, it does not address whether removal is significantly likely in the reasonably foreseeable future now. The Court finds this insufficient to rebut Petitioner's showing because "[a] remote possibility of an eventual removal is not analogous to a significant likelihood that removal will occur in the reasonably foreseeable future." *Pan*, 2025 WL 3960013, at *4 (quoting *Escalante v. Noem*, No. 9:25-CV-00182-MJT, 2025 WL 2206113, at *4 (E.D. Tex. Aug. 2, 2025)). As it currently stands, the record before the Court is sparse as to whether there is a "significant likelihood" that Petitioner will be removed to Mexico (or elsewhere) in the "reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. Accordingly, the Court finds that Petitioner has articulated a "good reason to believe" that his removal is unlikely in the reasonably foreseeable future and Respondents have not rebutted that showing.

## III.   CONCLUSION

For the reasons set forth herein, the Petition will be **GRANTED**. An appropriate Order follows.

## ORDER

**AND NOW**, this 20th day of July, 2026, for the reasons stated in the Memorandum Opinion, it is hereby **ORDERED** that:

1.  The Petition for Writ of Habeas Corpus, ECF No. 1, is **GRANTED IN PART** to the extent it seeks Petitioner's release from ICE detention.

2.  Petitioner's challenges to his arrest and pre-final-order detention are **DISMISSED AS MOOT**.

7

3. Petitioner's challenge to the Government's third-country removal policy is **DISMISSED WITHOUT PREJUDICE** for lack of subject-matter jurisdiction.

4. Respondents shall immediately release Petitioner from ICE detention.

5. Nothing in this Order prevents Respondents from imposing lawful conditions of supervision consistent with the Immigration and Nationality Act and applicable regulations.

6. Respondents shall file a notice certifying compliance with this Order within seven days.

7. With no further action required by the Court at this time, the Clerk of Court shall mark this matter closed.

Stephanie L. Haines
United States District Judge